# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | | |
|---|---|---|
| **JERRY LANE WARD, SR.,** | ) | |
| | ) | |
| **Defendant/Movant,** | ) | |
| | ) | **Case Numbers:** |
| **v.** | ) | **CV 05-S-8049-J** |
| | ) | **CR 02-S-73-J** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

On June 15, 2005, the movant, Jerry Lane Ward, Sr., filed a motion pursuant to 28 U.S.C. § 2255, challenging his conviction in the United States District Court for the Northern District of Alabama on June 11, 2002. Movant is incarcerated at the Federal Correctional Institution located in Jesup, Georgia.

## I. PROCEDURAL HISTORY

On June 11, 2002, movant was convicted after a jury trial of conspiracy to manufacture, distribute, and possess with the intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. On October 30, 2002, he was sentenced to 360 months in prison, to be followed by five years of supervised release. He was represented at trial and sentencing by attorney Ed Tumlin. On direct appeal, however, movant was represented by another attorney,

Steve Willis Guthrie.  In the appeal, movant challenged:  (1) the sufficiency of the government's evidence; (2) discovery rulings; (3) the legality of a search; (4) prosecutorial misconduct; (5) admission of expert testimony by "non-experts"; and (6) the court's refusal to apply the "safety valve" principles of U.S.S.G. § 5C1.2.  By opinion dated April 15, 2004, the Eleventh Circuit Court of Appeals affirmed. Movant sought review in the Supreme Court, but that Court denied *certiorari* on November 1, 2004.

Movant filed the present motion to vacate his conviction pursuant to 28 U.S.C. § 2255 on June 15, 2005, setting forth the following claims:

(1) he was denied effective assistance of counsel in that his attorney at trial and sentencing: (a) failed to challenge properly the Government's contention at sentencing that movant played a leadership role in the criminal conspiracy because he conceded that movant had "some real or direct influence,"[1] and (b) failed to challenge at either trial or sentencing the designation of the substance as "actual" methamphetamine;[2] and

(2) he was denied effective assistance of counsel in that his attorney on appeal: (a) failed to assert that the trial court erred in instructing the jury that it could find him guilty on a lesser drug quantity than that described in the indictment, which "constructively amended" the indictment;[3] (b) failed to assert that the trial court erred in failing to instruct the jury properly concerning whether the substance involved

---

[1] *See* doc. no. 1, at 9.

[2] *See* doc. no. 1, at 10-A.

[3] *See* doc. no. 1, at 5.

was "actual" methamphetamine;[4] and (c) failed to assert that his sentence was improperly enhanced on the basis that he played a leadership role in the criminal conspiracy.[5]

Pursuant to this court's order to show cause, the Government filed an answer on August 30, 2005.  On September 15, 2005, the parties were notified that the motion would be considered for summary disposition, and the movant was notified of the provisions and consequences of this procedure under Rule 8 of the *Rules Governing § 2254 Cases*.  Movant filed a traverse in support of his motion On September 14, 2005..

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

Movant claims that he received ineffective assistance of counsel at trial, during sentencing proceedings, and on direct appeal.  The United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel under the Sixth Amendment.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The Court elaborated:

---

[4]*See* doc. no. 1, at 6-7.

[5]*See* doc. no. 1, at 8.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To show ineffectiveness of counsel, movant must demonstrate that his or her attorney's performance fell below "an objective standard of reasonableness," *id*. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Also, in making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

The effectiveness or ineffectiveness of counsel must be evaluated by consideration of the totality of circumstances. *Stanley v. Zant*, 697 F.2d 955, 962 (11th Cir. 1983). The court also must remember that a defendant in a criminal case has a constitutional right only to adequate counsel; stated another way, he is not entitled to the very best legal representation. *Stone v. Dugger*, 837 F.2d 1477 (11th Cir. 1988). It is further well-settled that the court must be "highly deferential" when

4

assessing counsel's performance, and must afford a strong presumption that counsel acted reasonably. *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*). The presumption may be overcome only upon a showing that "no competent counsel" would have taken the action committed by movant's counsel. *Id*. at 1314-15

The second element required to support a cognizable claim of ineffective assistance of counsel is a showing of prejudice. Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused *actual* prejudice. *See Strickland v. Washington*, *supra*. "Prejudice" in this context means a reasonable probability that the outcome of the proceeding would have been different had the errors not occurred.

### A. 'Role' Enhancement

Movant asserts that his trial attorney rendered ineffective assistance by failing to properly argue at the sentencing hearing that movant was not in a leadership role of the conspiracy and should not be subject to a sentence enhancement based on that role. (Claim 1(a)). Additionally, he alleges that his appellate attorney also was ineffective because he failed to argue on appeal that the "leadership" enhancement was error. (Claim 2(c)).

The record is clear that movant's trial attorney filed written objections to the pre-sentence investigation report, specifically objecting to references to the movant as a "partner," or as one who "directed" others in the drug conspiracy.  At the sentencing hearing,  counsel clearly objected to the role enhancement by stating:

MR. TUMLIN:    The first thing that we were talking about in the report, and the first thing that I mentioned is where they say that Mr. Ward, Sr., is, in fact, a partner. Once again, we would object to all what we would call conclusory type wording or statements in the report that would seem to make Mr. Ward be something that he is not. We do not believe that there was any testimony that showed that he was a partner in any form or fact.

We also object to the — what was, once again, we believe is conclusory type conclusions on behalf of the Government that he was one of the biggest meth cooks or producers along with Ricky Lewis, and I forget the other gentleman's name right now, the other person's name.  So we certainly do not think that there was any testimony at the trial that presented or showed that.  So we once again object to that, because then that starts the whole report running downhill, if you accept that premise that, in fact, he is some kind of partner, or he's some kind of bigwig in this conspiracy.

Now, as to the other issues specifically, we object to the conclusion that he is some type of manager, or he showed some type of leadership skill, thereby adding four points extra to his total. And that he was [an] organizer, leader of a criminal activity, we would object to that. And we would proffer to the

Court that when you look at that particular section and distinguish one leadership and organizational role from one of mere management or supervision, once again, titles such as kingpin or boss — and I would argue they try to use "partner" and things like that in this particular instance, that these are not controlling. That they're factors or some factors that the Court certainly can look at, will be factors that include the exercise of decision-making authority, the nature of participation, the claimed right to a large or shared fruits of the crime, the degree in participation or planning or organizing, among other type of activities, or something that would tend to show that that person may have been or [was in] some kind of leadership/organizational role. We certainly believe that the Government established that he had some real or direct influence on other participants in a criminal activity.

Once again, Your Honor was here and heard the trial. We can conclude, and we cannot think of anything that has thus been said or testified to that showed some how that Mr. Ward, Sr., somehow directed activity; in fact, most of the testimony, certainly there was nobody that said he cooked, or even liked to be around cooking, and certainly that was a critical activity. I don't believe anybody said that he is the one that said, "Oh, let's go cook at this particular place," be it where they considered that highway auto shop. I don't think anybody says, "Well, he directed me, or he told me, or he demanded that I go do this act," which may have been considered part of a conspiracy. So I think that the record is fairly void of anything showing that he had some kind of leadership or organizational skill apart from just being a person in the conspiracy. So we think that that has not been shown or proven by

the facts in evidence that were admitted in this case in this trial. And by looking at those various factors, and I am sure Your Honor can think of other factors, I am sure that by looking at those factors, that one cannot say that he had any degree of participation, or that he directed people to do this, or that he involved, he set up, for instance, cooks, said, "Hey, let's go cook at so and so's house." And there was a lot of testimony about various cooks at various places. So we don't think there's anything that can show that he had such a high level of control that he participated, or protected, or directed these people in this endeavor or in this conspiracy.

(Sentencing Transcript, Vol. 1, at 5-8.)

Movant complains that his attorney conceded that he played a leadership role in the conspiracy by stating that the Government "has established" that movant "had some real or direct influence on other participants in a criminal activity." Taken in the context in which that phrase was uttered, however, it is clear that counsel simply misspoke at one point during a lengthy argument that clearly made the opposite point. The record patently indicates that counsel's position before and during the sentencing hearing was that there was no evidence, or there was insufficient evidence, to support a finding of a leadership role, and certainly the court understood this at the time of sentencing.

Furthermore, movant has offered no evidence or even any suggestion that the court considered the statement as an admission or concession, or that the court based

its finding on the single phrase mistakenly uttered by counsel.  Indeed, the court well understood that counsel objected to the leadership-role enhancement on the basis that there was no evidence supporting it.  The court clearly based its decision on an "overwhelming amount of evidence," and not on any concession by counsel.  The court stated:

> That objection is clearly due to be overruled.  Mr. Ward, Sr., directed the activity of five or more participants including himself.  Without any question, he was an organizer and leader of a criminal activity that involved five or more participants, and . . . it was also extensive.  And I include in that count Mr. Ward, Sr.; his son, Jerry Ward, Jr.; daughter, Marlaine D. Ward; Marla Ward; Helen Renee Hearon; Rhonda Fay Raynor; among others.  But that's just the start.  So the four-level enhancement of Mr. Ward, Sr.'s base offense level for leadership role pursuant to Guideline Section 3B1.1(a) is established by an overwhelming amount of evidence, not just a preponderance.  So that objection is overruled.

(Sentencing Transcript, Vol. 1, . 41-42.).  Accordingly, this court finds that the trial attorney who also represented movant at the sentencing hearing was not ineffective with respect to objecting to movant's leadership-role enhancement, and Claim 1(a) is due to be denied.

Movant further argues that his attorney on appeal was ineffective when failing to raise the same issue of role enhancement on appeal (Claim 2(c)).  The government argues that appellate counsel made a strategic choice to forego that ground on appeal, but the government's contention is not supported with any evidence; it is mere

conjecture.   The court cannot determine whether a decision not to assert any particular ground on appeal was a strategic decision in the absence of some evidence that the attorney made such a decision, as distinct from merely failing to recognize it as an appealable issue.   Otherwise, silence on the part of counsel would be an absolute defense to the failure to raise any given ground for an appeal, so long as some other ground was asserted.

In this instance, however, movant has failed to demonstrate the second prong of the ineffective-assistance test: that he was prejudiced by any such failure to raise the claim regarding role enhancement.   It is clear that the evidence adduced at trial and the facts recited in the presentence investigation report more than adequately support a finding that Ward played a leadership role.   As was pointed out in the appellate opinion, Ward's automotive shop was one of the sites of methamphetamine production, and Ward accompanied (and directed) "pill gatherers" on trips to Florida, for the clear purpose of obtaining the essential ingredients for the drug "cooking" process.   Because there was, as this court found, "overwhelming" evidence of movant's leadership role, counsel's failure to argue that sentencing objection on appeal was not ineffectiveness.   There is no reasonable probability that, had the issue been argued on appeal, it would have made any difference in the outcome of the appeal or sentence.   Accordingly, movant has failed to show that he suffered actual

prejudice from appellate counsel's failure to raise the issue.  For this reason, Claim 2(c) also is due to be denied.

### B.  'Purity' of Methamphetamine

Movant argues that his counsel at trial and during sentencing proceedings rendered ineffective assistance because he failed to challenge the government's contention that the substance at issue was "actual" methamphetamine.  (Claim 1(b)). Likewise, he argues that appellate counsel was ineffective for failing to argue on appeal that the trial court erred by not instructing the jury that it must find 50 grams of "actual" methamphetamine.  (Claim 2(b)).

With respect to his representation at the sentencing hearing, the only specific "failure" of trial counsel identified by movant is that he "made no effort to clarify [the testimony of the chemist who tested a sample for purity]'s or to object to the absence of evidence that could justify the court's finding that the substance was 'actual.'" The essence of movant's argument is that, because the chemist tested only one sample for purity, there was no evidence that any of the other of hundreds or thousands of batches of drug produced during the many months of the conspiracy contained a total of 50 grams or more of "actual" methamphetamine required to constitute the offense charged.

11

As a claim for § 2255 relief, movant's allegation of ineffectiveness is without any basis in fact, because trial counsel *did* object to the sufficiency of the evidence at trial, and to the attribution of the drug quantity contained in the presentence investigation report. This alone belies any allegation that counsel was ineffective. The fact that his objections were overruled does not mean that he was ineffective.

Furthermore, as the court noted at sentencing, the quantity of methamphetamine produced as part of this conspiracy was vast, and the evidence was more than sufficient to support a finding by the court at sentencing that more than 1.5 kilograms (*i.e.*, 1,500 grams, or thirty-times the amount charged) of actual methamphetamine was attributable to the movant. This finding refutes the idea that movant's trial counsel had any real grounds for challenging the testimony of the chemist in question, or for otherwise pointing out an alleged "absence" of evidence. To the contrary, in light of the overwhelming evidence of the quantity of the drug produced during this broad and lengthy conspiracy, a jury would have been authorized to infer that 50 grams of actual methamphetamine was at issue, even if that jury believed only a small portion of the testimony adduced at trial. Claim 1(b) is due to be denied.

As to movant's claim that his attorney on appeal rendered ineffective assistance by failing to challenge the trial court's "failure to instruct the jury to find whether

[the] substance was 'actual' methamphetamine," a reasonable appellate lawyer could easily have concluded that this was not an argument with merit. The indictment charged the defendant with the crime of dealing in actual methamphetamine; consequently, the jury did not need to differentiate between "actual" methamphetamine and a "mixture." Furthermore, given the vast quantities of methamphetamine at issue in this case, and given testimony regarding the purity of the sample tested, any claim related to the quantity of "actual" methamphetamine would be a claim that a reasonable lawyer might forego. Accordingly, Claims 1(b) and 2(b) are without merit and due to be dismissed.

### C. Error in Jury Instruction

Finally, movant contends that his attorney on appeal rendered ineffective assistance because  he failed to object to the trial court's instruction that the jury could find movant guilty on a drug quantity less than that described in the indictment (Claim 2(a)). This claim is without any basis in fact or law for at least two reasons. First, the jury found the defendant guilty of conspiracy to manufacture 50 grams of methamphetamine, so that any reference to a lesser amount was at worst harmless error, not worthy of appeal. Second, the instruction movant describes does nothing more than inform the jury of the possibility of convicting the defendant of a lesser-included offense.

At the outset it should be observed that the jury found the movant guilty of the precise offense alleged in Count One of the indictment — conspiracy to manufacture more than 50 grams of methamphetamine. Thus, any instruction authorizing the jury to find him guilty with respect to lesser amounts did not affect the verdict. At worst, such an instruction would have been harmless error that would not have supported a reversal of the conviction. *See* Rule 52(a), *Federal Rules of Criminal Procedure*. That being so, it was neither professionally unreasonable for counsel to forego that argument on appeal, nor prejudicial to the movant.

Second, the complained of instruction did nothing more than instruct the jury on the lesser-included offense of manufacturing amounts of methamphetamine smaller than 50 grams. By definition, lesser-included offenses are encompassed within the indictment charging the greater crime. Thus, instructing a jury on the lesser offense is not a "constructive amendment" of the indictment; the charge in the indictment remains precisely the same. The jury is authorized to find a lesser offense when the evidence does not support one or more of the elements of the greater offense, while proving all of the elements of the included, lesser offense. In this instance, the jury might have found drug quantities less than 50 grams, but, in fact, found the movant guilty precisely as charged in Count One of the indictment. Accordingly, Claim 2(a) is also due to be denied.

14

**CONCLUSION**

The court finds that all of the claims advanced by movant are meritless and due to be denied.  By separate order, the court will deny movant's motion pursuant to § 2255 to vacate or set aside his conviction and sentence.

DONE this 8th day of November, 2007.

_____
United States District Judge